UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **ESTATE OF ASHER BROWN, et al.,** § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | **CIVIL ACTION NO. 11-cv-1491** |
| § | |
| **CYPRESS FAIRBANKS INDEPENDENT** § | |
| **SCHOOL DISTRICT,** § | |
| § | |
| Defendant § | |
| § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Reconsideration (Doc. No. 40). After considering the motion, the responses thereto, and the applicable law, the Court finds that Defendant's motion for reconsideration must be **GRANTED** and Plaintiff's due process claim brought pursuant to § 1983 dismissed.

### I.   BACKGROUND

Plaintiff Amy Truong, individually and in her representative capacity for the Estate of Asher Orrin Michael Brown ("Plaintiff" or "Truong"), brings this suit following the suicide of her son, Asher Orrin Michael Brown ("Asher"), a middle school student in the Cypress Fairbanks Independent School District.  Plaintiff asserts that Asher committed suicide after suffering as a victim of constant bullying by other students.  (Complaint ("Compl."), Doc. No. 12, at ¶ 98.)  Plaintiff alleges that Cypress Fairbanks Independent School District ("CFISD" or "Defendant"), through its acts and omissions, failed to protect Asher from harm while he attended Hamilton Middle School.[1]  (*Id.* ¶¶ 10–11.)

---

[1] A lengthy recounting of the factual allegations in this case is available in this Court's February 21, 2012 Order (Doc. No. 36).

Plaintiff originally brought claims under the Rehabilitation Act and Title IX, as well as First Amendment, Equal Protection, and Due Process claims pursuant to 42 U.S.C. § 1983. Defendant filed a motion to dismiss all of Plaintiff's claims (Doc. No. 18). On February 21, 2012, this Court issued an order granting in part and denying in part Defendant's motion to dismiss.[2] ("February 21 Order," Doc. No. 36.) The Court ruled that Plaintiff had stated a due process claim pursuant to 42 U.S.C. § 1983 and a harassment claim under Title IX, 28 U.S.C. § 1681(a). (*Id.*) Defendant now asks this Court to reconsider its ruling on Plaintiff's due process claim in light of *Doe v. Covington County School Board*, 2012 WL 976349 (5th Cir. Mar. 23, 2012), an en banc Fifth Circuit decision issued after this Court's February 21 Order. Defendant contends that this recent decision clarifies that Plaintiff's due process claim fails as a matter of law and, therefore, asks this Court to dismiss Plaintiff's due process claim brought pursuant to § 1983. Plaintiff filed a response in opposition (Doc. No. 45) to Defendant's motion for reconsideration. Defendant filed a reply brief (Doc. No. 46) and a supplemental authority in support of Defendant's argument (Doc. No. 47).

## II.     LEGAL STANDARD

### A.  Rule 59(e) motions

Rule 59(e) provides that a motion to alter or amend a judgment must be filed no later than twenty-eight days following the entry of judgment. FED. R. CIV. P. 59(e). Depending on the timing of the motion, the Fifth Circuit treats a motion for reconsideration as either a motion to alter or amend under Rule 59(e), or a motion for relief from judgment under Rule 60(b). *United States v. Turner*, No. CA 11-928, 2011 WL 2836752, at *1 (E.D. La. July 15, 2011) (citing

---

[2] This case was originally styled *Estate of Asher Brown v. Dr. John Ogletree, President of the School Board of the Cypress Fairbanks Independent School District, et al.* On April 27, 2012, Defendant filed an unopposed motion (Doc. No. 43) to dismiss John Ogletree and to substitute the Cypress Fairbanks Independent School District as the named defendant in this action. The Court granted Defendant's motion on April 30, 2012 (Order, Doc. No. 44).

*Lavespere v. Niagara Mach. & Tools Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990)). If the motion is filed within twenty-eight days of the judgment, then the motion constitutes a motion to alter or amend under Rule 59(e). *Id.*; FED. R. CIV. P. 59(e). A motion filed more than twenty-eight days after the judgment, but not more than one year after the entry of judgment, is governed by Rule 60(b). FED. R. CIV. P. 60(b).

Because Defendant's motion to dismiss was only partially granted, final judgment was never entered in this case. Therefore, the Court treats the instant motion as a Rule 59(e) motion for reconsideration. A district court has considerable discretion to grant or deny a motion under Rule 59(e). *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). A court's reconsideration of an earlier order is an extraordinary remedy and should be granted sparingly. *Fields v. Pool Offshore, Inc.*, No. 97-3170, 1998 WL 43217, at *2 (E.D. La. Feb. 3, 1998), *aff'd*, 182 F.3d 353 (5th Cir. 1999); *see also Rottmund v. Cont'l Assur. Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992) (although federal district courts have inherent power over interlocutory orders and may modify, vacate, or set aside these orders when the interests of justice require, "[b]ecause of the interest in finality . . . courts should grant motions for reconsideration sparingly").

To succeed on a Rule 59(e) motion, a party must clearly establish at least one of the following factors: (1) an intervening change in the controlling law, (2) the availability of new evidence, or (3) a manifest error of law or fact. *Fields*, 1998 WL 43217, at *2; *see also Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005). As the Fifth Circuit has explained, "Rule 59(e) does not set forth any specific grounds for relief." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), *abrogated on other grounds, Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). Although a district court has "considerable discretion in deciding whether to reopen a

case" under Rule 59(e), "[t]hat discretion, of course, is not limitless." *Id.* at 174. However, the Fifth Circuit has emphasized that a Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–9 (5th Cir. 2004).

### III. ANALYSIS

Relying on the recent Fifth Circuit decision in *Doe v. Covington County School Board*, 2012 WL 976349 (5th Cir. Mar. 23, 2012), Defendants argue that Plaintiff's § 1983 due process claim necessarily must fail as a matter of law. In *Covington*, the Fifth Circuit considered whether the plaintiff—a nine-year old elementary school student—adequately alleged a violation of a constitutional right where the plaintiff was checked-out and molested on six separate occasions by a man who was not authorized to take the plaintiff out of school. 2012 WL 976349, at *3. As the Fifth Circuit explained, the plaintiff's constitutional claim was based not on the individual's molestation of the plaintiff, "but rather upon the school's allegedly deficient check-out policy, which allowed the molestation to occur" insofar as it did not require school officials to verify the identity of individuals before releasing children into their custody. *Id.* Finding that the school district defendants had no constitutional duty to protect the plaintiff from non-state actors, the Fifth Circuit determined that the plaintiff failed to allege a violation of any constitutional right. *Id.* Further, the Fifth Circuit clarified that a school district's duty to protect a student is contingent upon the existence of a special relationship, as defined in the Supreme Court's *DeShaney* opinion. *Id.*

"As a general matter . . . a state's failure to protect an individual against private violence simply does not constitute a violation of due process." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). In *DeShaney,* the Supreme Court first mapped out the

"special relationship" exception to that general rule. Under the special relationship exception, a state may be required to protect a citizen from harm, even private harm, "when the State takes a person into its custody and holds him there against his will." *Id.* at 199–200. The Fifth Circuit has subsequently extended the special relationship exception to the following three scenarios: (1) incarceration, (2) involuntary institutionalization, and (3) the placement of children in foster care. *Griffin v. Johnston*, 899 F.2d 1427, 1439 (5th Cir. 1990).

In the present case, Plaintiff argues that CFISD violated Asher's due process rights by failing to enforce anti-bullying policies at Hamilton Middle School. When this Court originally considered Defendant's motion to dismiss (Doc. No. 18), it contemplated three possible bases for Plaintiff's due process claim. First, the Court considered Plaintiff's argument that CFISD's inaction in failing to enforce the policies allowed the bullying—and harm to Asher's bodily integrity—to continue and, indeed, to escalate to the point that it became unbearable to Asher. Second, the "special relationship" exception could have been proposed to argue that the school district had duty to protect Asher.[3] Third, the Court considered whether CFISD could be liable under a state-created danger theory of the case, as Plaintiff argued that CFISD's "culture that condoned bullying" increased the danger posed to Asher during the school day. The Court dismissed the latter bases for Plaintiff's claim, finding that Plaintiff had not advanced a special relationship theory and that Plaintiff's state-created danger theory failed as a matter of law.[4]

---

[3] At the time of the motion to dismiss, Plaintiff made clear that she did not offer a special relationship theory of liability in the case, and, therefore, the Court did not consider the special relationship exception in issuing its February 21 Order. (Doc No. 27, at 16.)

[4] In her opposition to Defendant's motion for reconsideration, Plaintiff urges the Court to reinstate Plaintiff's state-created danger theory. As this Court explained in the February 21 Order, the status of the state-created danger theory in the Fifth Circuit remains unclear and recent Fifth Circuit decisions have declined to recognize the doctrine. (Doc. No. 36, at 18–19.) Contrary to Plaintiff's reading, nothing in *Covington* changes this. In fact, the *Covington* opinion reiterates that "recent decisions have consistently confirmed that '[t]he Fifth Circuit has not adopted the state-created danger theory of liability.'" 2012 WL 976349, at *13 (quoting *Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010)). Further, the Fifth Circuit explicitly stated in *Covington*: "We decline to use this en banc

However, the Court allowed Plaintiff's due process claim to proceed under the first argument, reasoning that the existence of explicit CFISD policies mandating action on the part of Defendants in the face of student-on-student bullying gave rise to CFISD's duty to protect Asher from bodily harm and threats to his bodily integrity. Defendants now ask this Court to reconsider the viability of this first argument, arguing that, post-*Covington*, it can no longer serve as the foundation for Plaintiff's claim. The Court finds here that Defendants are correct.

The *Covington* opinion clarifies that the Fifth Circuit makes any public school student's right to bodily integrity contingent upon the existence of a special relationship between the student and the school. And the *Covington* decision further circumscribes the application of the special relationship exception, confining it to the three scenarios listed above. *See Covington*, 2012 WL 976349, at *5 ("We have not extended the *DeShaney* special relationships exception beyond these three situations, and have explicitly held that the state does *not* create a special relationship with children attending public schools.").

Plaintiff argues that the facts of *Covington* are distinguishable from the instant case because here the policies in place would have been effective had they been enforced, in contrast to the defective policy at issue in *Covington*. Plaintiff's attempt at a distinction makes no difference. Regardless of whether the issue is existence of a policy or enforcement of a policy, CFISD policies promising school action to prevent student-on-student bullying cannot serve as a basis for Asher's constitutional due process rights. Because the policies at issue were intended to govern non-state actors—*i.e.*, the behavior between and among other school children—CFISD's failure to enforce the policies did not result in the violation of Asher's constitutional rights.

---

opportunity to adopt the state-created danger theory." *Id.* Because the status of the state-created danger theory in the Fifth Circuit remains unchanged, Plaintiff's request to reinstate her state-created danger theory must be denied.

CFISD had no constitutional duty to protect Asher from harm inflicted by a non-state actor and, therefore, could not have violated Asher's constitutional rights in failing to do so.

Plaintiff is correct in pointing out that this Court did not initially frame its decision allowing Plaintiff's § 1983 due process claim to proceed in terms of the special relationship exception. Instead, this Court focused on CFISD's inaction as evidence of deliberate indifference. This Court's focus was misplaced. *Covington* makes clear that any duty to protect must be moored to a special relationship. "Without a special relationship, a public school has no *constitutional* duty to ensure that its students are safe from private violence." *Covington*, 2012 WL 976349, at *6 (emphasis in original). "An allegation of deliberate indifference may be sufficient to *violate* a constitutional duty, but it is not sufficient to *create* the constitutional duty." *Id.* at *10. Because there is no special relationship between CFISD and Asher, the Court's original basis for allowing Plaintiff's § 1983 claim to proceed was incorrect.[5]

Two prongs of Rule 59(e) are arguably satisfied here. To the extent that the *Covington* opinion holds that deliberate indifference alone, without the existence of a special relationship, is insufficient to give rise to a constitutional duty to protect a public school student from violence at the hands of other students, Defendants' motion for reconsideration must be granted on the grounds of an intervening change in the controlling law.[6] *Fields*, 1998 WL 43217, at *2. As

---

[5] In the opposition to the motion for reconsideration, Plaintiff also urges this Court to allow Plaintiff's § 1983 claim to stand pursuant to what Plaintiff terms an "additional avenue for establishing a constitutional violation: the 'shocks the conscience' standard." (Doc. No. 45, at 10.) Plaintiff's characterization of the Fifth Circuit's discussion of the "shocks the conscience" standard as an additional avenue of relief is incorrect. As *Covington* makes clear, the shocks the conscience standard is *not* a separate exception to the *DeShaney* principle. 2012 WL 976349, at *17. Where "[t]he actual harm inflicted upon [the student] . . . was caused by [a] private actor, . . . the state cannot be held constitutionally liable for its 'failure to protect an individual against private violence,' save for the special relationship theory and, in some circuits, the state-created danger theory." *Id.* (quoting *DeShaney*, 489 U.S. at 197). "To allow the [Plaintiff] to proceed on a shocks the conscience theory without first demonstrating a constitutional duty to protect would be wholly inconsistent with *DeShaney*." *Id.* Again, the absence of a special relationship precludes this Court's further consideration of Plaintiff's § 1983 claim.

[6] The conclusion the Court is forced to reach here in no way diminishes the very real and disturbing allegations of deliberate indifference contained in Truong's Complaint. The Complaint pleads facts to demonstrate that CFISD had official policies in place—both a "Student Welfare" policy and a "District Improvement Plan" specific to the

*Covington* makes clear, CFISD's "failure to protect the student [Asher] from private harm (even if foreseeable) d[oes] not give rise to a constitutional claim in the absence of a finding that a custodial relationship already existed." 2012 WL 976349, at *11; *see also* 2012 WL 976349, at *12 ("Because we find no special relationship, we do not address whether the school's alleged actions . . . amounted to 'deliberate indifference.'"). To the extent that the *Covington* decision merely solidifies this position in the Fifth Circuit, as some of the language in the decision would suggest, this Court's prior ruling allowing Plaintiff's § 1983 claim to proceed on evidence of deliberate indifference alone constituted an error of law, also necessitating a grant of Defendant's motion here. *See, e.g.*, *Covington*, 2012 WL 976349, at *6 ("We reaffirm, then, decades of binding precedent: a public school does not have a *DeShaney* special relationship with its students requiring the school to ensure the students' safety from private actors.").

Plaintiff nonetheless argues that this Court may allow Truong's claim to proceed based solely on the plain language of 42 U.S.C. § 1983, even in the absence of any special relationship foundation.[7] Section 1983 states:

> Every person who under color of [law] . . . subjects, or *causes to be subjected*, any citizen of the United States or other person within the jurisdiction thereof to the

---

Hamilton Middle School campus—to address bullying among students. (Compl. ¶¶ 62–63.) The Complaint also pleads facts to show that, after learning of the bullying Asher suffered, Asher's parents made over a dozen attempts, through a variety of means, including phone calls, in-person visits, handwritten notes, and emails, to speak to school officials about Asher's bullying. (*Id.* ¶¶ 8, 99–100, 110–119.) Asher himself filed incident reports regarding the abuse he suffered, and several of Asher's classmates filed incident reports on his behalf. (*Id.* ¶¶ 103, 105–06, 125–26, 133.) All of these attempts to spur action by CFISD were continually rebuffed, as phone calls, notes, and emails were never returned or even acknowledged and incident reports were ignored. The Court thus reiterates that the Complaint adequately alleges that CFISD acted with deliberate indifference in "consciously disregard[ing] a known and excessive risk to [Asher]'s health and safety"; the Court laments the fact that these allegations of deliberate indifference are insufficient to allow Plaintiff's § 1983 claim to stand.

[7] Plaintiff's argument for stand-alone statutory liability under § 1983 is based entirely on Judge Higginson's concurring opinion in *Covington.* In his concurrence, Judge Higginson advocates for a literal reading of § 1983's "causes to be subjected" language and contemplates what he terms the "grey zone" cases "where a government person's alleged recklessness or deliberate indifference or intentionality is inextricably intertwined with a not-remote injury allegedly inflicted by a third person, the first (government person) causing the citizen to be subjected to injury by the second (non-government) assailant." 2012 WL 976349, at *20. Plaintiff asserts that the facts of Asher's case fall into this "grey zone" category of cases and, therefore, that a jury should have the opportunity to decide whether Defendant's inaction was too causally remote for liability.

>   deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law . . . .

42 U.S.C. § 1983 (emphasis added). The language of § 1983, as further clarified under *Covington*, makes clear that Truong's claim cannot proceed. To state a claim under § 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Covington*, 2012 WL 976349, at *3 (citing *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)). While the Fifth Circuit has previously recognized a student's right to bodily integrity, that right is only violated where a state actor deprives the student of that right. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994).

Here, the alleged violations of Asher's bodily integrity were caused by other students at Hamilton Middle School who bullied Asher, and by Asher's own actions in taking his life. Plaintiff claims that CFISD caused Asher to be subjected to the deprivation of his right to bodily integrity by failing to investigate allegations of bullying or otherwise intervene in his defense. For CFISD to be liable under § 1983, CFISD must first have a constitutional duty to protect Asher from non-state actors. As the Fifth Circuit has underscored in *Covington*, CFISD had no such duty in the absence of a special relationship. Because Plaintiff has not—and cannot—allege such a special relationship, there is no foundation for stand-alone statutory liability under § 1983.[8]

The restraints placed on the Court by *Covington*—and, indeed, by *DeShaney* and its progeny in the Fifth Circuit—are nonetheless troubling. The holding in *Covington* has the

---

[8] Plaintiff initially declined to plead a special relationship theory of the case. (Doc No. 27, at 16.) Plaintiff now requests leave to amend the Complaint should this Court dismiss Plaintiff's § 1983 claim. (Doc. No. 45, at 1.) Plaintiff's request to amend to include additional argument related to the special relationship deficiency must be denied. As *Covington* makes clear, a special relationship exists in only three circumstances: incarceration, involuntary commitment, and foster care. 2012 WL 976349, at * 5. Because none of these scenarios is applicable to the case at hand, any attempt by Plaintiff to plead the existence of a special relationship would be futile and, therefore, will not be permitted.

undesirable effect here of allowing a school district to affirmatively enact anti-bullying policies which purport to assume responsibility to react to private violence, that is, violence inflicted by other students, yet absolve the same school district of responsibility for enforcement of such policies absent the existence of a special relationship. Sadly, this is not new. *See, e.g.*, *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005) (finding that plaintiff had failed to state a due process claim where police failure to enforce restraining order against plaintiff's estranged husband resulted in husband's killing of plaintiff's three daughters).

Further, the effect of *Covington* would seem to undermine state laws requiring schools to adopt—and, presumably, enforce—anti-bullying policies.[9] The Fifth Circuit is content to pass this concern on to the state courts, positing that schools "may have such a duty [to ensure that students are safe during the school day] by virtue of a state's tort or other laws." *Covington*, 2012 WL 976349, at *7. This stance is especially unfortunate here given that the Texas Tort Claims Act forecloses Truong from pursuing a state law remedy in this case.[10] *See* TEX. CIV. PRAC. & REM. CODE § 101.001 *et seq*. Following *Covington*, in the absence of a special relationship between the school and the student, public school officials who enact anti-bullying policies do not violate a student's constitutional due process rights by failing to enforce such policies, no matter how pervasive the bullying, no matter how hateful, and no matter how many lives, in addition to Asher's, are lost.

---

[9] These laws include H.B. 283, passed in 2005, which was modeled after the federal Safe Schools Act and added sections to the Texas Education Code requiring state school boards to adopt "Student Codes of Conduct" to address bullying and to have methods in place to prevent and intervene in situations of harassment. (Compl. ¶ 58.) H.B. 283 further amended the Texas Education Code to require school districts to adopt "discipline management programs" to provide for prevention and education of unwanted verbal aggression and bullying. (*Id.* ¶ 59.) Finally, the Texas Association of School Boards ("TASB") distributed a memorandum to school boards statewide entitled "Harassment And Bullying Policies in Public Schools." (*Id.* ¶ 60.) The TASB memorandum explicitly warned school boards that "a school district could be liable when there is student-to-student harassment" where a district's "deliberate[] indifference cause [sic] students to undergo harassment or makes them vulnerable to it, and the harassment takes place in a context subject to the school district's control." (*Id.*)

[10] Defendant argues that this is not entirely true, proposing that Plaintiff could sue the students who bullied Asher. (Doc. No. 46, at 4.)

## IV. CONCLUSION

In light of the Fifth Circuit's ruling in *Doe v. Covington County School Board*, 2012 WL 976349 (5th Cir. Mar. 23, 2012), the Court has determined that Defendants' Motion for Reconsideration (Doc. No. 40) must be **GRANTED** and the Court hereby dismisses Plaintiff's due process claim under 42 U.S.C. § 1983 for failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 23rd day of May, 2012.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE